UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
PUROLITE CORPORATION, et al.,                               :
                                                            :
                              Plaintiffs,                   :       17 Misc. 67 (PAE)
            -v-                                             :
                                                            :       OPINION & ORDER
HITACHI AMERICA, LTD., et al.,                              :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      This decision addresses the pending application, Dkt. 1, by petitioners Purolite Corp., Purolite AG, and Purolite K.K. (together, "Purolite") for an order, pursuant to 28 U.S.C. § 1782, directing respondent Hitachi America, Ltd. ("HAL") to comply with third-party discovery sought in aid of Purolite AG's pending lawsuit in Tokyo against Hitachi-GE Nuclear Energy, Ltd. ("HGNE"), *Purolite AG v. Hitachi-GE Nuclear Energy, Ltd.*, Case No. Heisei 26th Year (Wa) No. 29420, Tokyo District Court, Civil Division, Section 46-D ("the Japan Action"). The Court assumes familiarity with the parties' submissions on Purolite's application. For Purolite, these consist of declarations by Leonard A. Feiwus, Esq. ("Feiwus Decl."), Dkt. 2, and Mitsuhira Kamiya ("Kamiya Decl."), Dkt. 3, and a memorandum of law, Dkt. 4 ("Purolite Mem."); HAL also submitted a memorandum of law, Dkt. 18 ("HAL Mem."). The Court also assumes familiarity with the related action that Purolite Corp. has brought in this Court against HAL, AVANTech, Inc. ("Avantech") and certain Avantech personnel, *Purolite Corp. v. Hitachi America, Ltd.*, No. 16 Civ. 6852 (PAE) ("the U.S. Action"). On January 6, 2017, the Court stayed that action pending progress in the Japan Action.

The Court's analysis, applying the statutory § 1782 factors and the discretionary factors identified by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–265 (2004), follows below.

In summary, the Court's judgment is that there is a proper basis under § 1782 on which to order HAL to provide third-party discovery for use in the Japan Action by Purolite AG. That is because Purolite AG's theory of HGNE's liability in that action centrally implicates HAL. HAL is alleged, on HGNE's behalf, to have solicited business from U.S. entities, and/or to have executed contracts with such entities, for remediation work at the Fukushima plant that would use Purolite's proprietary technology, allegedly in breach of the Partnership Agreement between HGNE and Purolite. For that reason, § 1782 discovery from HAL is warranted, much as the United States District Court for the District of South Carolina, in its order of April 4, 2016, held third-party discovery under § 1782 warranted from Avantech, a U.S. entity that Purolite alleges was solicited by HAL and worked with HGNE in connection with the Fukushima remediation work in a manner that breached the Partnership Agreement. *See* Dkt. 2, Ex. 1. The Court accordingly stands ready to approve a properly drawn subpoena for such use; and grants Purolite's application, to the extent that it seeks approval in concept of third-party discovery by Purolite AG of HAL for use in the Japan Action.

However, the Court cannot approve Purolite's proposed subpoenas for documents and testimony as they are currently drafted. *See id.*, Exs. 2–3. These subpoenas are patently overbroad. They would improperly reach evidence held outside the United States, including evidence held in Japan by HAL affiliates. And they appear aimed in part at fortifying the incipient U.S. Action, rather than being tailored to the distinct claims, defenses, and needs of the Japan Action. The subpoena for documents in particular presents significant concerns of an

undue burden. The Court therefore will direct counsel for Purolite AG and HAL, now that they are apprised that the Court will approve properly tailored subpoenas under § 1782, promptly to work together to negotiate the parameters of materially narrowed subpoenas, consistent with the discussion herein.

1. **Statutory Requirements**

The Court first considers the three statutory prerequisites for discovery under § 1782. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *In re Chevron Corp.*, 749 F. Supp. 2d 141, 160 (S.D.N.Y. 2010).

The first statutory requirement is that the person from whom discovery is sought resides or is found in the District in which the application is made. *Id.* Because HAL is headquartered in Tarrytown, New York, and conducts business out of its New York headquarters, *see* Kamiya Decl. ¶ 12, that requirement is met.

However, as HAL notes, some evidence covered by Purolite's subpoena appears held abroad, including in Japan. The document subpoena, for example, defines "Hitachi America" and "You"—meaning the subpoena's recipients—to include HAL's "parents, subsidiaries, and affiliates," presumably including Japan-based HGNE. HAL Mem. at 9–10. To the extent that the subpoena seeks non-U.S. discovery, including by seeking discovery from HAL's foreign affiliates through the expedient of a subpoena to HAL, such evidence is beyond the reach of a § 1782 subpoena. *See In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006). In finding the first statutory prerequisite met, the Court relies only on evidence held by HAL, a U.S. entity, not by its non-U.S. affiliates.

The second statutory requirement is that the discovery requested be for use in a foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 80; *Chevron*, 749 F. Supp. 2d at 160. This requirement,

too, is satisfied with respect to some of the discovery that Purolite seeks. Most obviously, HAL's efforts in the United States on behalf of or in coordination with HGNE, either (1) disclosing Purolite's proprietary technology to other entities in connection with potential Fukushima remediation work, or (2) seeking to partner, or partnering, with other entities in connection with such work as would make use of Purolite's proprietary technology are centrally germane to the Japan Action. At a minimum, the Court finds, these efforts by HAL are an appropriate subject of § 1782 discovery.

But the same finding cannot be made across-the-board as to Purolite's two proposed subpoenas. Purolite has not shown that all 23 calls in its 22-page subpoena *duces tecum*, or all 13 subjects covered by its testimonial subpoena for a corporate witness from HAL, are relevant, let alone "central to the claims" in the Japan Action. Purolite Mem. at 18. As HAL notes, some document calls do not refer to HGNE at all. And some appear targeted to the U.S. action against HAL as opposed to the Japan Action. Most revealing in this regard is Purolite's 21st call. It seeks HAL's "written policies, practices or procedures and guidelines relating to Your document retention and destruction," and specifically demands production of all such materials as to a host of subsidiary topics. These include "backup tape rotation schedules," "employee use policies of Your computers, data, and any other technology," "file naming conventions and standards," "password, encryption and other security protocols, "diskette, CD, DVD, and any other removable-media labeling standards," "email storage conventions (*i.e.*, limitations on mailbox sizes/storage locations, schedule and logs for storage, etc.)," "electronic media deployment, allocation and maintenance procedures for new employees, current employees, or departed employees," "software and hardware upgrades (including patches) through the present (who and what organization conducted such upgrades)"; and "personal and home computer usage for

4

work-related activities." Dkt. 2-2, at 21. A United States court might welcome such production from a party to a lawsuit. But Purolite offers no reason to believe that the Tokyo court would have any interest whatsoever in such evidence regarding a third party's systems, databases, and internal protocols. In finding the second statutory requirement met, the Court finds that only some, not all, evidence sought by Purolite is for use in the foreign proceeding.[1]

The third statutory requirement is that Purolite be an "interested person." Purolite AG, the plaintiff in the Japan Action, qualifies as such. *See In re Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996).

## 2. The *Intel* Factors

The Court next considers the four discretionary factors identified by the Supreme Court in *Intel*. These are: (1) whether the respondent from whom discovery is sought is a "participant in the foreign proceeding," (2) the receptivity of the foreign tribunal to U.S. court assistance, (3) whether the Section 1782 request is an attempt to "circumvent foreign proof-gathering restrictions," and (4) whether the discovery sought is "unduly intrusive and burdensome." 542 U.S. at 264–65.

The first *Intel* factor favors granting the application. HAL is not a party to the Japan Action. And the Tokyo court does not have apparent jurisdiction to compel U.S.-based discovery from HAL, any more than it had authority to compel discovery from Avantech. *See*

---

[1] In arguing that the discovery sought by Purolite is not for foreign use, HAL notes that the Japan Action is at an early stage, and that the Tokyo court is in the process of narrowing the scope of the issues to be tried. HAL argues that the protean quality of the Japanese Action favors denying Purolite's § 1782 application. HAL Mem. 5–7. That factor does favor moderating the scope of § 1782 discovery while the contours of the Japan Action take shape, and perhaps, arranging for § 1782 discovery to proceed in stages. But whatever the eventual contours of that action, it is already sufficiently apparent that HAL's assistance to HGNE in the procurement process to the extent that use of Purolite's proprietary technology was contemplated, as described above, is centrally relevant to issues in the Japan Action.

5

*e.g.*, *In re Ex Parte Application of Porsche Automobil Holding SE ("In re Porsche")*, 15 Misc. 417, 2016 WL 702327, at * 7 (S.D.N.Y. Feb. 18, 2016).

The second *Intel* factor also favors granting the application. As Purolite's submissions reflect, the Tokyo court appears prepared to consider at least some material received as a result of the discovery obtained from Avantech pursuant to § 1782. *See* Kamiya Decl. ¶¶ 17–18 (noting that Tokyo court has asked the parties to submit a brief addressing such evidence, and to translate it into Japanese). HAL notes that the Tokyo court has sought briefing as to the import of the Avantech evidence, signaling that it has not yet determined the weight, if any, to assign it. But the Tokyo court has not rebuffed or excluded such evidence. And HAL does not offer a concrete basis on which to find that the Tokyo court would reject evidence from HAL obtained pursuant to § 1782. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *In re Porsche*, 2016 WL 5818597, at *2; *In re Application of Hornbeam Corp.*, 14 Misc. 424, 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014). On the contrary, U.S. courts addressing § 1782 applications have anticipated that courts in Japan would be receptive to evidence obtained pursuant to § 1782 discovery. *See, e.g.*, *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112–123 (9th Cir. 2015); *Matter of Application of O2CNI Co., Ltd.*, No. C 13-80125 CRB (LB), 2013 WL 4442288, at *7 (N.D. Cal. Aug. 15, 2013).

The third *Intel* factor inquires whether Purolite seeks evidence from HAL in good faith, as opposed to, for example, as a means to circumvent foreign proof-gathering restrictions. HAL does not point to any affirmative prohibition under Japanese law on receiving the evidence that Purolite seeks. As Purolite notes, that is the pertinent issue as to Japan. That Japanese law does not contain analogous discovery mechanisms is no bar to discovery under § 1782 provided that the Japanese courts would welcome such discovery. *See Gorsoan Limited v. Bullock*, 652 F.

App'x 7, 9 (2d Cir. 2016) (summary order) ("there is no requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding").

A separate issue under this *Intel* factor, however, is presented by the parallel U.S. Action. As noted, this Court, over Purolite's objection, has stayed that action pending further progress in the Japan Action. The Court's assessment, agreeing with HAL, is that the broad-ranging subpoenas for documents and testimony that Purolite has propounded appear aimed, in part, at strengthening Purolite's hand in the U.S. Action. The document subpoena, in particular, closely resembles the subpoena the Court would have expected Purolite to propound to HAL in the U.S. Action were it not stayed. Evidence of this includes that: (1) the § 1782 application is by three Purolite entities, only one of which is a party to the Japan Action, and another of which, Purolite Corp., is plaintiff in the U.S. Action; (2) the subpoena seeks discovery from foreign affiliates of HAL, including Japan-based HGNE, which is outside the bounds of a proper § 1782 subpoena, but which would be permissible in the U.S. Action; (3) a number of calls in the subpoena lack a textual nexus to HGNE, the sole Hitachi defendant in the Japan Action; (4) the subpoena's calls for expansive records as to document preservation mechanisms (#21) and litigation holds (#20), in particular, are characteristic of a subpoena to a party to a domestic lawsuit, not of a § 1782 non-party subpoena; and (5) the subpoena, in general, is characterized by broadly formulated demands. Purolite has not attempted to justify with specificity each call in the subpoenas with reference to the claims, defenses, and areas of actual factual dispute in the Japan Action as it has developed. The testimonial subpoena is subject to the same critique, insofar as it identifies the demands within the document subpoena as an intended subject of examination. *See* Dkt. 2, Ex. 3 at 11.

The fourth *Intel* factor, which evaluates the burden and intrusion presented by the proposed subpoena, yields the same outcome. In addition to the concerns identified above, the calls in the document subpoena to HAL seek, with few exceptions, six years of records of HAL and all of its affiliates. These include electronically stored records (*e.g.*, emails) from potentially large numbers of custodians. Based on the face of the subpoena, the Court infers that, unless the subpoena is significantly pruned, the process of retrieval, review, and production of documents so as to assure compliance would be quite time-consuming and costly for HAL. *See Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 (HB) (HBP), 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty"). Even allowing for the fact that non-party HAL is an affiliate of HGNE, as opposed to being fully arms-length from the controversy being litigated in Tokyo, these burdens, without more, appear disproportionate.

3. **Overall Assessment**

Balancing the above factors, the Court holds that while § 1782 permits properly tailored subpoenas to issue from Purolite AG to HAL for use in the Japan Action, the Court cannot approve the two subpoenas in their present form. And the subpoenas are sufficiently overbroad that it is not productive to take the approach used by the District Court in the District of South Carolina, which conditionally approved the § 1782 subpoena as to Avantech, subject to Avantech's right to move to quash or modify it. *See* Feiwus Decl., Ex. 1 at 4 n.4.

The Court's judgment is that a more fruitful approach is to invite the parties, now on notice that the Court stands ready to approve appropriately narrowed subpoenas and guided by the discussion here, to attempt to agree on the scope of the § 1782 subpoena(s) to issue to HAL.

8

The Court directs that the parties meet within two weeks to attempt collaboratively to refine such subpoenas, and to bring this process to completion within four weeks of today. Thereafter, the Court will, if necessary, resolve any remaining disputes. But the Court is confident that thoughtful counsel can together chart a course that balances Purolite AG's legitimate needs for discovery in the Japan Action against HAL's legitimate interests in avoiding overreach and undue burden.

## CONCLUSION

For the reasons stated above, the Court grants Purolite AG's application to pursue § 1782 discovery from HAL, but denies the application for approval of the two proposed subpoenas in their present form, without prejudice to Purolite AG's right to propose narrowed subpoenas. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 1.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 9, 2017
New York, New York